UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) <br> ) <br> BRANDEN CHARLES GRIMM, and ) <br> KIMBERLY RENEE LOWERY-GRIMM, ) <br> ) <br> Debtors. ) <br> ) | CASE NO. 15-18034-MER |
| ) <br> NEXTGEAR CAPITAL, INC., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BRANDEN CHARLES GRIMM, and ) <br> KIMBERLY RENEE LOWERY-GRIMM, ) <br> ) <br> Defendants. ) <br> ) | Adv. Pro. No. _____ |

SERVE:   10975 Columbine Street
Northglenn, CO 80233

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT

The plaintiff in this action, NextGear Capital, Inc. ("Plaintiff" or "NextGear Capital"), by counsel, pursuant to the provisions of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), and 727(b); and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, requests that the Court determine certain obligations of Branden Charles Grimm ("Branden") and Kimberly Renee Lowery-Grimm ("Kimberly," and collectively with Branden, the "Defendants") to NextGear Capital to be nondischargeable. In support of its Complaint, NextGear Capital states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. On July 17, 2015 (the "Petition Date"), Defendants filed in the District of Colorado a Petition for Relief under Chapter 7 of the United States Bankruptcy Code, thereby

creating Case No. 15-18034-MER.

2. Defendants listed their physical address in a written filing with this Court as 10975 Columbine Street, Northglenn, CO 80233

3. Defendants were represented in the filing of the Petition for Relief by Ryan Peterson, whose business mailing address is 7550 W. Yale Avenue, Suite A-150, Denver, CO 80227.

4. At all times relevant herein, Kimberly was the president and sole owner of K B Motorsports, Inc. d/b/a K B Motorsports ("Dealer"), a Missouri corporation that operated a used car dealership from 511 S. Ingram Mill Road, Springfield Missouri.

5. At all times relevant herein, Branden was an employee and/or agent working for the Dealer.

6. At all times relevant herein, Defendants were jointly in control of the Dealer and responsible for its day-to-day operations.

7. Plaintiff is a Delaware corporation doing business in Colorado and is a creditor of Defendants in their underlying bankruptcy case. NextGear Capital is the successor by merger to Manheim Automotive Financial Services, Inc. ("MAFS") and Dealer Services Corporation ("DSC"). On January 31, 2013, MAFS merged with DSC to form NextGear Capital, Inc., a Delaware corporation doing business in Oregon. A true and accurate copy of the Certificate of Merger Merging Manheim Automotive Financial Services, Inc. with and into Dealer Services Corporation (the "Certificate of Merger"), bearing the file stamp of the Secretary of State of the state of Delaware, is attached hereto and incorporated herein as <u>Exhibit A</u>.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under

28 U.S.C. § 1409(a).

## FACTS COMMON TO ALL COUNTS

9. On or about January 29, 2010, Dealer executed a Demand Promissory Note and Security Agreement in favor of DSC (the "DSC Note"). A true and correct copy of the NextGear Note is attached hereto and incorporated herein as Exhibit B.

10. On or about July 30, 2013, Dealer executed a Demand Promissory Note and Loan and Secuirty Agreement (the "NextGear Note" and collectively with the DSC Note, the "Notes") in favor of NextGear Capital. A true and correct copy of the NextGear Note is attached hereto and incorporated herein as Exhibit C.

11. By its terms, the NextGear Note was an amendment and restatement of of the DSC Note.

12. Pursuant to the terms of the Notes, DSC, and subsequently NextGear Capital, provided Dealer with a discretionary line of credit pursuant to which Dealer could request loan advances to acquire and/or retain motor vehicle inventory for Dealer's lot.

13. Pursuant to the terms of the Notes, to secure the indebtedness and other obligations to Plaintiff, Dealer granted Plaintiff a security interest in the following assets:

> All Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in Borrower's Reserve held by or on behalf of Lender, if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables and general intangibles now owned or hereafter acquired by Borrower; all cash reserves; all of Borrower's books and records (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of Borrower in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing.

(collectively, the "Collateral").

14. Plaintiff's security interest in the Collateral was perfected by virtue of a UCC-1 Financing Statement filed by DSC with the Colorado Secretary of State on February 1, 2010, which was subsequently amended on August 2, 2013. True and correct copies of the UCC-1 Financing Statement and amendment thereto are collectively attached hereto and incorporated herein as Exhibit D.

15. As a further condition of extending credit to Dealer, Plaintiff required Defendants to each execute an Individual Personal Guaranty (collectively, the "Guaranties") in favor of Plaintiff, whereby each Defendant guaranteed prompt and full payment to Plaintiff of all obligations of Dealer pursuant to the Notes. True and correct copies of the Guaranties are attached hereto and incorporated herein as Exhibit E.

## COUNT I—FRAUD OR DEFALCATION IN A FIDUCIARY CAPACITY, EMBEZZLEMENT, OR LARCENY
## (11 U.S.C. § 523(a)(4))

### Against Kimberly Renee Lowery-Grimm Only

16. NextGear Capital realleges and incorporates by reference the allegations of paragraphs 1 through 15, the same as if set forth verbatim herein.

17. Between February 21, 2013 and July 7, 2015, DSC, and subsequently, NextGear Capital advanced funds (the "Advances") to Dealer and to third parties on Dealer's behalf, for Dealer's purchases of inventory pursuant to the terms of the Notes.

18. The vehicles purchased with the Advances constituted Collateral under the Notes.

19. Plaintiff declared a default under the NextGear Note on August 29, 2013 as a result of monetary and non-monetary defaults by Dealer.

20. Plaintiff has not recovered fourteen (14) of the twenty-four (24) floor planned vehicles which had an outstanding balance as of the Petition Date, and there are currently no

floor planned vehicles remaining in Dealer's inventory or possession. A list of the fourteen (14) missing vehicles (the "Vehicles"), including each Vehicle's year, make, model, Vehicle Identification Number, the amount originally advanced to Dealer, and the principal balance remaining on each Vehicle, is attached hereto and incorporated herein as Exhibit F.

21. On information and belief, Dealer has sold all of the Vehicles and has received full payment from the consumers who purchased the Vehicles.

22. Pursuant to Sections 4(i) and 5(g) of the DSC Note, and Sections 4(f) and 5(o) of the NextGear Note (the "Trust Provisions"), Dealer was required to hold in trust, for the benefit of Plaintiff, the proceeds from the sale of any vehicle financed by Plaintiff ("Sales Proceeds"), and to remit such proceeds to Plaintiff within twenty-four (24) hours of receipt.

23. The Trust Provisions of the Notes created an express trust for the benefit of Plaintiff, with a clearly identifiable trust res comprised of Sale Proceeds.

24. Kimberly was the sole owner and president of the Dealer, and was the individual who controlled the Sales Proceeds.

25. Kimberly was therefore responsible for complying with the Trust Provisions of the Notes by holding the Sale Proceeds in trust for Plaintiff.

26. Kimberly had a fiduciary duty to hold the Sale Proceeds in trust for the benefit of Plaintiff and to remit the Sale Proceeds to Plaintiff within twenty-four (24) hours of receipt.

27. Kimberly breached her fiduciary duty by intentionally failing to deliver the Sale Proceeds of the Vehicles to Plaintiff, instead using those Sale Proceeds for other purposes.

28. Kimberly was aware of the terms of Dealer's secured line of credit with Plaintiff, as those terms were spelled out in the Notes, which Kimberly executed in her capacity as the president of Dealer.

29. At the time Kimberly received the Sale Proceeds from the sales of the Vehicles, Kimberly knew that Dealer was in financial distress.

30. At the time Kimberly received the Sale Proceeds from the sales of the Vehicles, Kimberly knew that she was in financial distress.

31. As of the Petition Date, the principal balance owed on the Vehicles, excluding all interest and fees, was One Hundred Forty-Thousand, Four Hundred Thirty-Two and 58/100 Dollars ($140,432.58).

32. Kimberly is liable to Plaintiff for fraud or defalcation in a fiduciary capacity, and the sum of One Hundred Forty-Thousand, Four Hundred Thirty-Two and 58/100 Dollars ($140,432.58) is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as Plaintiff's actual damages relating to Kimberly's actions.

**COUNT II—ADDITIONAL EXTENSIONS OF CREDIT OBTAINED THROUGH FALSE PRETENSES, A FALSE REPRESENTATION, OR ACTUAL FRAUD
(11 U.S.C. § 523(a)(2)(A))**

**Against Branden Charles Grimm Only**

33. NextGear Capital realleges and incorporates by reference the allegations contained in paragraphs 1 through 32, the same as if repeated verbatim herein.

34. At all relevant times herein, on a monthly basis, Plaintiff sent an "auditor" to the Dealer's lot to, among other things, physically inspect the status of the Collateral and determined that no Unit of Lender Financed Inventory was sold "out of trust" in contravention of the Trust Provisions.

35. If, during any audit, the auditor determined that a vehicle had been sold out of trust in contravention of the Trust Provisions of the Notes, Plaintiff would lock Dealer's account if the sales proceeds from such vehicle were not paid within seven (7) days – thus prohibiting

further Advances under the Notes.

36. At all times relevant herein, Branden was aware of the Trust Provisions within the Notes.

37. At all times relevant herein, Branden was aware that Plaintiff would lock the Dealer's account if Dealer sold vehicles out of trust.

38. On multiple occasions, as specifically detailed herein, Branden knowingly and intentionally lied to Plaintiff's lot auditors to conceal that several vehicles financed by Plaintiff were sold out of trust.  Specifically:

### The 2005 Ford F350

39. On April 9, 2013, Dealer requested and obtained inventory financing from Plaintiff in accordance with the DSC Note to acquire a 2005 Ford 2005 F350, VIN 1FTWW33P25EA86425 (the "2005 F350") in the amount of Fourteen Thousand, Three Hundred Ninety-Five and no/100 Dollars ($14,395.00).

40. On June 12, 2013, Dealer sold the 2005 F350 to Carmen Foster of Marshfield, Missouri for the sum of Seventeen Thousand Dollars ($17,000.00).

41. On June 24, 2013, Plaintiff's lot auditor, Casey Warren ("Warren"), appeared at Dealer's lot for the purposes of conducting an audit (the "June Audit").

42. During the June Audit, Branden falsely advised Warren that the 2005 F350 was not at Dealer's business premises because it was at a "repair shop" in Springfield, Missouri.

43. On August 2, 2013, Warren again appeared at the Dealer's lot for the purposes of conducting an audit (the "August Audit").

44. During the August Audit, once again, Branden falsely advised Warren that the 2005 F350 was at a repair shop.

45. Branden knew that his statements during the June Audit and the August Audit regarding the 2005 F350 were false, and he made them with the intent to deceive Plaintiff's lot auditors into believing the 2005 F350 had not been sold.

### The 2006 Impala

46. On April 23, 2013, Dealer requested and obtained inventory financing from Plaintiff in accordance with the DSC Note to retain a 2006 Chevrolet Impala, VIN 2G1WD58C669377952 (the "Impala") in the amount of Ten Thousand, One Hundred Seventy-Five and no/100 Dollars ($10,175.00).

47. On July 29, 2013, Dealer sold the Impala to Dale R. Crim and Mary L. Crim of Forsythe, Missouri for the sum of Ten Thousand Four Hundred and no/100 Dollars ($10,400.00).

48. During the August Audit, Branden falsely advised Warren that the Impala was "on display at the Church of Nazarene Festival in Monett, Missouri," and would be returned the following weekend.

49. Branden knew that his statement during the August Audit regarding the Impala was false, and he made them with the intent to deceive Plaintiff's lot auditors into believing the Impala had not been sold.

### The 2006 Ford F350

50. On May 9, 2013, Dealer requested and obtained inventory financing from Plaintiff in accordance with the DSC Note to acquire a 2006 Ford F350, VIN 1FTWW33P56EA45501 (the "2006 F350") in the amount of Eighteen Thousand, Two Hundred Twenty-Five and no/100 Dollars ($18,225.00).

51. Unbeknownst to Plaintiff, on May 6, 2013, Dealer had already sold the 2006 F350 to Gregory A. Branderhorst and Tracy A. Branderhorst for the sum of Twenty-Four Thousand,

Seven Hundred Seventy-Seven and no/100 Dollars ($24,777.00).

52. During the June Audit, Branden falsely advised Warren that the 2006 F350 was "on a test drive" with Branden Branderhorst, and was "going to be sold, but broke down in Alabama and [the] customer [was] cancelling the deal."

53. During the August Audit, Branden falsely advised Warren that the 2006 F350 was at a repair shop in Springfield, Missouri due to mechanical issues.

54. Branden knew that his statements during the June Audit and the August Audit regarding the 2006 F350 were false, and he made them with the intent to deceive Plaintiff's lot auditors into believing the 2006 F350 had not been sold.

### The 2005 Ford F150

55. On May 13, 2013, Dealer requested and obtained inventory financing from Plaintiff in accordance with the DSC Note to acquire a 2005 Ford F150, VIN 1FTPW14595FA88060 (the "2005 F150") in the amount of Eight Thousand, Four Hundred Forty-Four and no/100 Dollars ($8,444.00).

56. On July 29, 2013, Dealer sold the 2005 F150 to Dale R. Crim and Mary L. Crim of Forsythe, Missouri for the sum of Thirteen Thousand, Seven Hundred and no/100 Dollars ($13,700.00).

57. During the August Audit, Branden falsely advised Warren that the 2005 F150 was a "demo vehicle" that Branden was driving, and that it was parked at Branden's residence in Ozark, Missouri.

58. Branden knew that his statements during the August Audit regarding the 2005 F150 were false, and he made them with the intent to deceive Plaintiff's lot auditors into believing the 2005 F150 had not been sold.

The 2004 BMW

59. On May 28, 2013, Dealer requested and obtained inventory financing from Plaintiff in accordance with the DSC Note to acquire a 2004 BMW 3 series, VIN WBABW3346PL31361 (the "2004 BMW") in the amount of Eight Thousand, Three Hundred and no/100 Dollars ($8,300.00).

60. On July 1, 2013, Dealer sold the 2004 BMW to Evan J. Van Ostran of Springfield, Missouri for the sum of Eleven Thousand, Six Hundred and no/100 Dollars ($11,600.00).

61. During the August Audit, Branden falsely advised Warren that the 2004 BMW was a "demo vehicle" being driven by a dealership employee, Doug Ridenour.

62. Branden knew that his statements during the August Audit regarding the 2004 BMW were false, and he made them with the intent to deceive Plaintiff's lot auditors into believing the 2004 BMW had not been sold.

The 2006 Xterra

63. On May 28, 2013, Dealer requested and obtained inventory financing from Plaintiff in accordance with the DSC Note to acquire a 2006 Xterra 3 series, VIN 5N1AN08W96C539282 (the "2006 Xterra") in the amount of Nine Thousand, Two Hundred Fifty and no/100 Dollars ($9,250.00).

64. On July 27, 2013, Dealer sold the 2006 Xterra to Jonathan C. Payne of Ward, Arkansas for Thirteen Thousand and no/100 Dollars ($13,000.00).

65. During the August Audit, Branden falsely advised Warren that the 2006 Xterra was at a repair shop in Marshfield, Missouri.

66. Branden knew that his statements during the August Audit regarding the 2006

Xterra were false, and he made them with the intent to deceive Plaintiff's lot auditors into believing the 2006 Xterra had not been sold.

### Plaintiff's Damages

67. Had Plaintiff known at the June Audit that the 2005 Ford F350 and the 2006 Ford F350 had been sold out of trust, Plaintiff would have locked Dealer's account, thus prohibiting further advances under the Notes.

68. Similarly, had Plaintiff known at the August Audit that the 2005 Ford F350, 2006 Impala, 2006 Ford F350, 2005 Ford F150, 2004 BMW, and 2006 Xterra had all been sold out of trust, Plaintiff would have locked Dealer's account, thus prohibiting further advances under the Notes.

69. Instead, as a direct and proximate result of the knowingly and intentionally false statements made by Branden and detailed within this Count, on which Plaintiff reasonably relied, Plaintiff was duped into keeping Dealer credit line open.

70. The principal balance owed under Dealer's account (excluding all interest and fees) for Advances made from and after June 24, 2013 is Seventy-Seven Thousand, Seven Hundred Fifty-Four and 78/100 Dollars ($77,754.78).

71. The sum of Seventy-Seven Thousand, Seven Hundred Fifty-Four and 78/100 Dollars ($77,754.78) therefore represents additional extensions of credit obtained through false pretenses, false representations, and/or actual fraud, and is non-dischargeable pursuant to 11 U.S.C. 523(a)(2)(A).

### COUNT III—WILLFUL AND MALICIOUS INJURY
### (11 U.S.C. § 523(a)(6))

### Against Branden Charles Grimm and Kimberly Renee Lowery-Grimm

72. NextGear Capital realleges and incorporates by reference the allegations of

paragraphs 1 through 71, the same as if set forth verbatim herein

73. Defendants' respective conduct described above rises to the level of intentional monetary injury to NextGear Capital.

74. Kimberly willfully and intentionally determined how the Sale Proceeds from the Vehicles would be used.

75. Kimberly willfully and intentionally committed conversion of the Sales Proceeds that were encumbered by Plaintiff's duly-perfected security interest.

76. At the time Kimberly received the Sale Proceeds from the Vehicles, Defendant knew that she and Dealer were both in financial distress.

77. Kimberly knew that her misappropriation of the Sale Proceeds was substantially certain to harm Plaintiff, as neither Dealer nor Kimberly had any alternative source to repay Plaintiff for the converted Sale Proceeds.

78. Kimberly's actions were made without just cause or excuse.

79. Kimberly is therefore liable to NextGear Capital for willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6).

80. Similarly, Branden's false statements to Plaintiff's lot auditors were made with an intent to harm Plaintiff, or with a substantial certainty that Plaintiff would be harmed, by preventing Plaintiff from declaring a default under the NextGear Note and exercising its rights under the Uniform Commercial Code.

81. Branden's actions described in this Complaint were made without just cause or excuse.

82. NextGear Capital's damages under this count consist of the following: (1) as to Kimberly, the unpaid principal balance of the Vehicles; and (2) as to Branden, the unpaid

principal balance of loans that were made from and after June 24, 2013.

83. The sum of One Hundred Forty-Thousand, Four Hundred Thirty-Two and 58/100 Dollars ($140,432.58) therefore constitutes a nondischargeable debt of Kimberly to NextGear Capital under 11 U.S.C. 523(a)(6), as NextGear Capital's actual damages relating to Kimberly's actions.

84. The sum of Seventy-Seven Thousand, Seven Hundred Fifty-Four and 78/100 Dollars ($77,754.78) therefore constitutes a nondischargeable debt of Branden to NextGear Capital under 11 U.S.C. 523(a)(6), as NextGear Capital's actual damages relating to Branden's actions.

WHEREFORE, plaintiff NextGear Capital, Inc. respectfully requests that the Court enter judgment as follows:

(i) On Count I of Plaintiff's complaint, awarding judgment in favor of NextGear Capital and against Kimberly Renee Lowery-Grimm in the amount of One Hundred Forty-Thousand, Four Hundred Thirty-Two and 58/100 Dollars ($140,432.58), and declaring such debt non-dischargeable pursuant to 11 U.S.C. 523(a)(4);

(ii) On Count II of Plaintiff's complaint, awarding judgment in favor of NextGear Capital and against Branden Charles Grimm in the amount Seventy-Seven Thousand, Seven Hundred Fifty-Four and 78/100 Dollars ($77,754.78), and declaring such debt non-dischargeable pursuant to 11 U.S.C. 523(a)(2)(A);

(iii) On Count III of Plaintiff's complaint, awarding judgment in favor of NextGear Capital and Kimberly Renee Lowery-Grimm in the amount of One Hundred Forty-Thousand, Four Hundred Thirty-Two and 58/100 Dollars ($140,432.58), and declaring such debt non-dischargeable pursuant to 11 U.S.C. 523(a)(6); as well as awarding judgment in favor of

NextGear Capital and against Branden Charles Grimm in the amount Seventy-Seven Thousand, Seven Hundred Fifty-Four and 78/100 Dollars ($77,754.78), and declaring such debt non-dischargeable pursuant to 11 U.S.C. 523(a)(6); and

(iv) awarding NextGear Capital, Inc. such other and further relief as the Court may deem just and proper.

Respectfully submitted this 12th day of October, 2015.

**NEXTGEAR CAPITAL, INC.**

By: *s/ Neal K. Dunning*
Neal K. Dunning, Esq.
BROWN, BERARDINI & DUNNING, P.C.
2000 South Colorado Blvd.
Tower Two, Suite 700
Denver, CO 80222
Telephone: (303) 329-3363
Facsimile: (303) 393-8438
E-mail: ndunning@bbdfirm.com
*Attorney for NextGear Capital, Inc.*